## Kellman v. Philadelphia Zoning Board of Adjustment

*I. Finkelstein*, for plaintiff.

*Frank F. Truscott*, city solicitor, and *G. Coe Farrier*, assistant city solicitor, for defendants.

FLOOD, J., January 8, 1951.—This case has been twice before the zoning board and twice before us. We regret that we must return it to the board again. We feel we should not dispose of the case until the board, the primary authority in the matter, has passed upon the precise issue in the light of all the evidence that has been submitted to us. The record before us is so confused that we cannot be sure that it has done so. Nor can we tell from this record whether or not the decision of the board is correct.

Michael Kellman, applicant, owner of 1235-43 Crease Street, Philadelphia, Pa., on January 30, 1950, applied for a zoning permit and use registration for 1234-41 Crease Street "to erect a one-story building on area 68′ x 90′ " for his "trucking business". Apparently by mistake he omitted number 1243 in his application. A permit was refused by the bureau of

engineering, surveys and zoning. The bureau treated the application as a request for permission to erect a one-story addition as part of a trucking business and the permit was refused under section 4(6) of the Philadelphia Zoning Ordinance of August 10, 1933, which governs additions on buildings for the extension of nonconforming uses. The chief engineer noted that the addition would exceed 25 percent of the area of the buildings which housed the nonconforming use when the ordinance was passed. So considered the building could not be authorized by the bureau, whose powers are strictly limited by the ordinance.

Kellman's petition to the zoning board set forth: "The owner has been operating a hauling business in that location for 30 years and finds it necessary to erect the roof over the existing area to protect his equipment. He is not expanding—the area is now being used for parking his equipment. He finds it a hardship to operate as is."

The board recited the evidence of applicant to be:

". . . that he was in need of additional room and desired to erect a one-story addition; that the trucking business had been at this location for about 30 years; that he desired to put a roof over the area in order to protect his equipment; that the new addition would be an improvement."

The opinion further recited that protestants strongly objected that trucks are continually coming back and forth from 7 a.m. to 9 p.m., that Crease Street is not wide and the lives of their children and other pedestrians are continually in danger; that any addition to the business would increase this traffic hazard and cause further noise and disturbance.

The board treated the matter as an application for a variance and on February 18, 1950, refused a certificate of variance saying that "since the proposed erection does not comply with the requirements of the

zoning ordinance as to the rear yard and open area, a permit should not be granted". The board also refused the use registration with the notation that "the proposed addition to a trucking business, a nonconforming use, does not conform to the area requirements for the districts in which the premises are located (partly class "A" commercial and partly class "D-1" residential) . . .". The board's opinion, filed in connection with these refusals, indicates that it considered the existing buildings as housing the nonconforming use, and that these buildings could therefore be extended only by 25 percent and the addition had to conform to rear yard and open area requirements for the districts.

When Kellman appealed to this court, his petition stated that "all of the aforesaid premises have continually since the year 1900 been used as a stable for the storage of horses and for the storage of automobile trucks", that "the said premises have for upwards of 50 years been used for the same purposes that they are presently being used and are contemplated to be used;" that "the rear of premises 1235 Crease Street was originally a covered building but the same was destroyed by fire about 10 years ago."

This court took evidence on May 25, 1950. Applicant's position at the hearing was that the entire area had been used since before the ordinance "either to stable horses or trucks", that most of the area had been covered before an explosion knocked it down.

The evidence presented to us consisted entirely of the testimony of applicant's son. He testified that Kellman purchased 1237-1243 Crease Street, Philadelphia, Pa., in 1924. There was a garage along the front part of the premises, with an areaway behind it. There was a stable behind the areaway. This stable was two stories high and ran the entire width of the property. Along 1243 Crease Street was a wooden fence. Next

to 1235 was a covered roof over a driveway which went back to the stable. We might conclude that there was also a wooden roof on the 1243 side along the wooden fence behind the garage to shield wagons and other materials, although this was not too clear in the testimony. There was a "huge" manure pit in front of the stable. The area uncovered was "maybe 10 by 10 or something like that. It was not much of an open areaway".

In 1924 they had trucks in front, horses in the stable and "under the roof we had trucks and in the yard we had wagons". They had no horses and wagons by 1932, only trucks.

Kellman purchased 1235 Crease Street in 1947. For some unknown time it had been a roofed one-story garage covering the entire depth of the lot. About 1945 it exploded and Kellman's high roof next to it and his stable collapsed, leaving only his garage intact. After 1947 he got a permit and extended the garage in the front over 1237 and 1235.

"Quite recently" a fire destroyed the wooden fence and the city made Kellman put a 12-foot brick wall all around the property.

Kellman's son testified that the whole area, except for the same open area referred to above, was roofed over and used to store trucks as of August 10, 1933.

The board's counsel objected that all of these facts had not been submitted to the zoning board and that the board had no knowledge of what was there before 1942 and considered it an open lot.

This court, in a memorandum opinion filed June 27, 1950, said that no increase in the use was being sought, and, noting the concession of the board's counsel at the hearing before us that applicant had the right to roof over what was destroyed by the explosion in 1945, referred the matter back to the board to make an order in consonance with its counsel's opinion. The board was

also directed to specifically pass upon the right of applicant to roof over the area never before covered in the light of Gilfillan's Permit, 291 Pa. 358 (1927).

The board then held another hearing after which it filed an opinion stating that the evidence was "practically the same" as that presented at its former hearing. We do not know what evidence was offered to the board but it seems doubtful that it was the same evidence which we heard.

The board's opinion simply states that no further evidence was presented to warrant any change in its former opinion that while a nonconforming use exists, the proposed addition far exceeds 25 percent of the area of the existing building, and that the permit for the erection of an addition to a building housing a nonconforming use which would leave no rear yard and no open area as required by the ordinance in such a district should not be granted.

Proceedings before the board are informal—perhaps too informal, it would seem from this record. There is no record of the testimony before the board. The summary of the testimony in the board's first opinion, and the statement in the second opinion that the testimony given at the second hearing was "practically the same" as that at the first are altogether inadequate to enable us to determine with any precision what testimony the board had before it. The powers of the zoning board of adjustment in Philadelphia are very great. If it is to make its decision in these very important matters without recording the testimony upon which it acted, it must at least summarize it in such detail that a court on appeal may know what the board actually had before it, and we must return the record so that it may do so.

We cannot tell from the opinions the reason why the board acted as it did. The opinions in effect say that

the petition is refused because the proposed construction violates certain open area requirements of the ordinance. But the question before the board, as it appears to us, is not whether the construction would violate the area requirements of the ordinance, but whether because of the explosion, or because of the hardship to the complainant in a literal enforcement of the area requirements and lack of injury to the neighborhood the application should have been approved by the board, which has the power under proper circumstances to grant a variance. These things the board did not discuss. Since the board is the primary fact-finding body and the body in whom the authority to grant variances is reposed, we should not pass upon the matter without knowing the board's reasons for acting as it did.

We therefore refer the matter back to the board to:

A. Summarize fully the evidence before it.

B. Answer the following questions specifically:

1. What part of premises 1237-1243 Crease Street was roofed over on August 10, 1933?

2. Was all of this area used to house trucks in 1933? If not, what part was so used?

3. What was the physical condition and use of 1235 Crease Street in 1933?

4. What was the result of the explosion in 1235 Crease Street in 1945?

5. Should a variance be granted to permit the roofing over of the area uncovered in 1933?

6. Should an explosion be treated as a fire so that a certificate of variance is discretionary if reconstruction is not commenced within three years?

7. Should a certificate of variance be granted to allow a roof higher than that which existed before the explosion?

As to the fifth question: In our prior opinion we directed the board to pass upon this matter in the light of Gilfillan's Permit, supra. An answer to this question is necessary to satisfy the mandate.

As to the sixth question: In spite of the statement contained in applicant's certiorari to this court, it appears that these buildings were not destroyed by fire, but by the direct force of the explosion in 1235 Crease Street without fire. The ordinance says nothing about reconstruction after explosion. Failure to allow such reconstruction would probably render the ordinance pro tanto unconstitutional. The question remains whether by analogy to the fire and condemnation provisions of section 4(5) a three-year limit can be put upon the absolute right to reconstruct after explosion. We know of no authority on this, but the board may have passed upon it before. We should have an expression of its opinion on the matter in the answer to the sixth question submitted.

The seventh question raises an issue similar to that passed upon by us in the case of Drake v. Zoning Board of Adjustment, 65 D. & C. 293, 296 (1948). The question here is whether the hardship to applicant is such as to render insignificant by comparison any advantage to the neighbors upon the refusal of the permit.

The matter is again remitted to the board for proceedings consonant with this opinion.